# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔦𝔣𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

United States Courts
Southern District of Texas
FILED

*December 20, 2023*

Nathan Ochsner, Clerk of Court

United States Court of Appeals
Fifth Circuit
**FILED**
September 22, 2023

Lyle W. Cayce
Clerk

No. 21-20435

UNITED STATES OF AMERICA, *ex rel.*, KAREN MINIEX,

*Plaintiff—Appellant,*

*versus*

HOUSTON HOUSING AUTHORITY; CITY OF HOUSTON; J. ALLEN MANAGEMENT COMPANY, INCORPORATED; ALLIED ORION GROUP, LLC; ORION REAL ESTATE SERVICES TEXAS, LLC; THE LYND COMPANY; TARANTINO PROPERTIES, INCORPORATED;

*Defendants—Appellees.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-cv-01609

Before JOLLY, DENNIS, and HIGGINSON, *Circuit Judges.*

PER CURIAM:*

This appeal arises from a dismissal of a False Claims Act case brought by Karen Miniex. She is the former Vice President, General Counsel, and Director of Procurement for the Houston Housing Authority ("HHA"). She

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 21-20435

contends that HHA, the City of Houston ("the City"), and six property management companies ("PMCs") skirted federal housing regulations and thus violated 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G).

The district court dismissed Miniex's case under FED. R. CIV. P. 9(b) and 12(b)(6).[1] The district court also denied Miniex's motion for leave to amend her third amended complaint ("TAC"). Miniex appeals both orders. For the following reasons, we AFFIRM IN PART, REVERSE IN PART, and REMAND.

## I.

HHA is a public body that provides housing and housing assistance to low-income residents of Houston. Every year, in order to receive funding from HUD, HHA certifies to the United States that it will comply with various statutes and regulations. These regulations include procurement regulations—that is, regulations governing the hiring and management of contractors and services for HHA properties.

From at least 2012 to 2016, HHA handled the procurements for its properties. But in March 2016, HHA decided to outsource some of its procurement responsibilities to a handful of PMCs—namely, J. Allen, Allied, Orion, Lynd, and Tarantino. In their respective contracts with HHA, the PMCs certified that they would also follow certain statutes and regulations.

In December 2016, HUD's Office of Inspector General ("OIG") released a public audit of HHA, focusing specifically on HHA's procurement practices from 2012–2014. In relevant part, the report concluded that HHA repeatedly had failed to conduct federally-required cost estimates before procuring contractors and services.

---

[1] Because this case involves numerous entities, we apply the following abbreviations: Houston Housing Authority ("HHA"); U.S. Department of Housing and Urban Development ("HUD"); Office of Inspector General ("OIG"); the City of Houston ("the City"); property management companies ("PMCs"); Third Amended Complaint ("TAC"); J. Allen Management Company, Inc. ("J. Allen"); Allied Orion Group, LLC ("Allied"); Orion Real Estate Services Texas, LLC ("Orion"); The Lynd Company ("Lynd"); and Tarantino Properties, Incorporated. ("Tarantino").

No. 21-20435

Those events set the table for this dispute. In 2018, Miniex filed this qui tam FCA suit. She alleged that HHA had submitted false claims to HUD, i.e., that HHA had requested funding from HUD, promised to follow certain procurement regulations, and later violated those regulations; that HHA made false statements related to those claims; and that HHA concealed a monetary obligation to the United States. She further alleged that the City was vicariously liable for HHA's fraudulent conduct. Miniex then amended her complaint three times—twice under seal, and once more after the case was unsealed.[2] In her last amendment, she added the PMCs as defendants and alleged that they also had submitted false claims to HHA, made false statements related to those claims, and concealed a monetary obligation to the United States.

HHA, the City, and the PMCs each moved to dismiss the case. The district court was persuaded and entered judgment, dismissing the entire case with prejudice under FED. R. CIV. P. 9(b) and 12(b)(6), that is, for failure to plead fraud with particularity and for failure to state a claim. Miniex then moved for reconsideration and for leave to amend her complaint a fourth time. The district court denied these motions without explanation. Miniex appeals.

**II.**

Dismissals under FED. R. CIV. P. 9(b) and 12(b)(6) are reviewed *de novo. Carroll v. Fort James Corp.*, 470 F.3d 1171, 1173 (5th Cir. 2006). When reviewing issues under FED. R. CIV. P. 12(b)(6), we accept the TAC's well-pled facts as true and construe all reasonable inferences in the light most favorable to the plaintiff. *White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). "But we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* at 307 (quoting *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)).

We turn now to work our way through the issues party by party.

---

[2] The United States declined to intervene in this suit.

3

## III.

First, we consider the claims against HHA. As recounted above, Miniex contends that HHA violated the FCA by certifying that it would follow certain procurement regulations in order to receive federal funding, but that HHA subsequently did not comply with those regulations. Specifically, Miniex alleges that HHA certified that it would follow regulations requiring it to perform cost estimates of procurements before engaging any services, but that HHA repeatedly failed to perform those estimates.

The district court dismissed Miniex's HHA claims on three grounds: under the government action bar (31 U.S.C. § 3730(e)(3));[3] under FED. R. CIV. P. 9(b); and under FED. R. CIV. P. 12(b)(6).[4] Miniex argues that the district court erred on all three grounds in dismissing.

---

[3] "In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e)(3).

[4] In addition to the reasons cited by the district court, HHA further argues that Miniex's claims are precluded by the public disclosure bar, 31 U.S.C. § 3730(e)(4), an FCA affirmative defense that provides that "[t]he court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in, *inter alia*, a "Federal report, hearing, audit, or investigation." *Id.* This defense was raised by HHA in the district court but, as noted, the court did not address the issue. We believe, that in view of our decision to remand, the question will still be before the district court and would be better addressed by the district court, if necessary, in the first instance, given the fact-intensive complexities presented by the defense and its exceptions. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 380 (5th Cir. 2004) (quotation omitted); *see U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 287 F. App'x 396, 400 (5th Cir. 2008) (noting, when reviewing a pre-amendment version of the FCA, that the exception the parties dispute in this case relies on a fact-by-fact inquiry).

No. 21-20435

We agree with Miniex that the district court erred in dismissing the HHA.

*First*, the government action bar provides that an action may not be brought if it is "based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e)(3). The district court believed that the OIG audit qualified as a requisite government action. But the OIG audit is plainly not a civil action or a "administrative civil money penalty proceeding." Thus, the government action bar does not apply and the district court was incorrect to dismiss the HHA claims based on that exception.

*Second*, under FED. R. CIV. P. 9(b), plaintiffs must state "with particularity the circumstances constituting fraud or mistake." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (quoting FED. R. CIV. P. 9(b)) ("The particularity standard of Rule 9(b) generally requires the plaintiff to plead the time, place, and contents of the false representation and the identity of the person making the representation."). Here, the TAC outlines HHA's repeated requests for federal funding and the certifications it made to receive that funding, along with specific details regarding HHA's fraud via their alleged failure to conduct cost-estimates. For example, Miniex alleged over twenty-five specific transactions that rendered HHA's certification of compliance false. Because she outlined the "time, place, and contents" of those transactions, who was responsible for them, and what was gained out of it, Miniex has satisfied Rule 9(b) and the district court therefore erred in dismissing the HHA claims based on that rule.

*Third*, under FED. R. CIV. P. 12(b)(6), plaintiffs of course are required to state a claim for relief. To state a claim under the FCA, Miniex must plead that (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due. *United States ex rel Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 159 (5th Cir. 2019). And here, Miniex checked each of those boxes. The TAC states FCA claims against HHA based on a certification theory—that is, the TAC alleges that HHA was submitting false claims by certifying future compliance with various statutes and regulations, which HHA later violated,

thus rendering its prior certifications false. Contrary to HHA's arguments, Miniex did allege false statements per that theory. And furthermore, despite HHA's arguments otherwise, Miniex pled facts showing materiality. The existence of the OIG audit—which was attached to the complaint and which showed that HUD sought repayment for services that did not comply with the cost-estimate regulations—satisfies that requirement. *Id.* at 162–63. Given those allegations, Miniex has stated a claim that avoids dismissal under Rule 12(b)(6).

In sum, Miniex alleged enough facts to proceed against HHA, and we therefore REVERSE the district court's dismissal of the HHA claims and REMAND for further consideration.

## IV.

Next, we turn our attention to Miniex's claims against the City. The district court did not cite any authority in dismissing these claims. Instead, it ruled that Miniex "pleaded no facts that the City controls [HHA's] activities" and that the other allegations were "clearly insufficient under the heightened particularity standard." Thus, it appears that the district court dismissed the claims against the City under both FED. R. CIV. P. 12(b)(6) for failure to allege vicarious liability and under FED. R. CIV. P. 9(b)[5] for the failure to plead fraud with particularity.

Miniex argues on appeal that she has sufficiently alleged vicarious liability under an agency theory.[6] She notes that her TAC alleged that the

---

[5] FED. R. CIV. P. 9(b) reads: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[6] The City argues that Miniex did not raise an agency theory in the district court, thereby abandoning any reliance on agency law. To be sure, Miniex argued to the district court that the City was vicariously liable because the City and HHA were "so inextricably intertwined that for purposes of this suit, they should be considered as a single entity at law and equity." She never appealed to agency law as her basis for vicarious liability. That said, since she presented a claim of vicarious liability below and since she argued that the

No. 21-20435

Houston City Council created HHA and that the Mayor of Houston appoints people to HHA's Board of Commissioners, who in turn manage HHA's affairs. Based on these allegations, Miniex asserts that she has plausibly alleged either an actual agency relationship or that HHA acted with apparent authority.

But there are two problems with Miniex's arguments. For one, her briefing does not address the Rule 9(b) basis for dismissing the claims against the City. Thus, she has abandoned any argument against that basis for dismissal. *Davis v. Maggio,* 706 F.2d 568, 571 (5th Cir.1983) ("Claims not pressed on appeal are deemed abandoned.").

Furthermore, we agree with the district court that Miniex has not sufficiently alleged vicarious liability. We take her agency arguments below one-by-one.

## A.

The Restatement of Agency guides our analysis guides here. *See U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.,* 727 F.3d 343, 349 (5th Cir. 2013) (looking to the Restatement to see if a party alleged vicarious liability under a federal civil liability provision); *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.,* 816 F.3d 315, 326 (5th Cir. 2016) (same regarding False Claims Act retaliation). Indeed, as Miniex correctly notes, a principal is subject to liability for the torts of its agent if the agent commits the torts while acting with actual authority; or if the agent commits the tort "when acting with apparent authority in dealing with a third party on or purportedly on behalf of the principal." RESTATEMENT (THIRD) OF AGENCY § 7.03(1)(a), (2)(b) (AM. L. INST. 2006).[7]

---

City controlled HHA to the district court, we believe that Miniex has sufficiently, if inartfully, preserved the agency arguments that she makes.

[7] Both parties use the term "vicarious liability" to refer to the doctrine of imputing liability from an agent to the principal when the agent commits a tort while acting with actual authority. That is a slight misstatement—the Restatement (Third) of Agency states that principals are subject to *direct liability*, not vicarious liability, when an agent acts with

No. 21-20435

The City argues that no such facts are pled establishing a scope of HHA's alleged agency authority, thus we cannot determine that HHA was acting within its actual authority. Miniex argues that she pled the scope of actual authority by alleging that "HHA primarily administers two types of programs: public housing and housing vouchers."

Even assuming for the sake of argument that an agency relationship exists here, Miniex has failed to plead facts to make it plausible that HHA was acting with actual authority when violating the FCA. Here, the limited facts in the TAC do not allege the parameters of HHA's actual authority, as there are no allegations showing manifestations from the City to HHA, much less manifestations that the City wished for HHA to commit illegal acts. RESTATEMENT (THIRD) OF AGENCY § 2.01 (AM. L. INST. 2006) (defining actual authority). The single sentence Miniex cites above does not persuade us otherwise. The fact that HHA administers certain programs does not lead to the reasonable inference that HHA "reasonably believe[d], based on a manifestation of [the City]" that the City wished for HHA to take actions violating the FCA. RESTATEMENT (THIRD) OF AGENCY § 7.03 cmt. b (AM. L. INST. 2006). Without knowing the supposed scope of actual authority, this court cannot say that there is a plausible case that HHA acted *within* that scope.

In conclusion, we agree with the City that Miniex failed to plead facts showing that HHA acted within its scope of authority. For these reasons, Miniex has failed to plead facts showing that the City is liable for HHA's actions under an actual agency relationship theory.

## B.

Having concluded that there is no liability via actual authority, we turn to Miniex's alternative argument: that the City is vicariously liable for HHA because HHA acted with apparent authority of the City. To plead a claim of apparent authority, Miniex must plead facts showing "(1) that the acting party subjectively believed that the agent had authority to act for the principal and (2) that the subjective belief in the agent's authority was objectively

---

actual authority. RESTATEMENT (THIRD) OF AGENCY § 7.03(1)(a) (AM. L. INST. 2006).

No. 21-20435

reasonable." *Poly-America, Inc. v. N.L.R.B.*, 260 F.3d 465, 480 (5th Cir. 2001). The word "believes" is key here: there must be a subjective belief that the party had authority. *Id.* Furthermore, the subjective belief must be traceable to the manifestations of the alleged principal. Restatement (Third) of Agency § 3.03.

Miniex repeats the same arguments here as noted above. The City argues in response that Miniex had to show that she was induced to act in good faith upon representations made by the City. We agree with the City: Miniex has failed to plead any facts showing that she or anyone else had a subjective belief that HHA was acting an agent of the City, or that such a belief was traceable to the manifestations of the City. For that reason, the TAC fails to plausibly allege apparent authority.

For these reasons, the district court correctly found that Miniex failed plausibly to plead vicarious liability against the City. Thus, we AFFIRM the district court's dismissal of the claims against the City.

## V.

Finally, we turn to the last group of defendants: the property management companies ("PMCs"). According to Miniex, the PMCs signed agreements with HHA promising to comply with various statutes and regulations related to procurements. Miniex argues that despite these promises, the PMCs ignored those laws; but, nevertheless, submitted claims to HHA for reimbursement. In its brief attention to the matter, the district court appears to have dismissed the claims against the PMCs under Fed. R. Civ. P. 9(b) and 12(b)(6). We will take the parties' arguments in the most orderly way to resolve this appeal.

First, we examine Miniex's claims against Tarantino, Lynd, and Orion, against whom the allegations are bare. When a plaintiff, as here, alleges an FCA case, Fed. R. Civ. P. 9(b) requires plaintiffs to state "with particularity the circumstances constituting fraud or mistake." *Bollinger Shipyards*, 775 F.3d at 260 (quoting Fed. R. Civ. P. 9(b)). But Miniex's claims against Tarantino, Lynd, and Orion fail under this standard. Her allegations against these entities are entirely summary, never specifying the properties, contractors, or services procured by these entities. Indeed, the allegations do not even detail *when* the false claims were submitted or *when*

9

any particular conduct by these entities occurred.  Stated in general terms, the TAC here fails to allege "the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (quoting *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010)).

Miniex, however, asserts that she alternatively satisfies the particularity standard articulated in *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).  There, we held that Rule 9(b)'s "time, place, contents, and identity" standard was "not a straitjacket," and that even if a relator could not meet that standard and could not "allege the details of an actually submitted false claim, [a complaint] may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190. Miniex contends that the TAC at the very least meets this standard.

We disagree.  As explained above, the TAC does not plead any "*particular details* of a scheme to submit false claims," *id.* (emphasis added).[8] For these reasons, the claims against Tarantino, Orion, Lynd were properly dismissed.

We now turn to the two remaining PMCs—J. Allen and Allied. Although Miniex's claims against J. Allen and Allied are factually identical to her other PMC claims, the TAC's attachments do, however, offer more details. But even if these claims satisfy FED. R. CIV. P. 9(b)'s particularity requirement, these claims nevertheless fail under FED. R. CIV. P. 12(b)(6) for the failure to allege scienter. *Bollinger Shipyards*, 775 F.3d at 259.

The requisite scienter under the relevant FCA provisions is that the defendant acted "knowingly."    31  U.S.C. § 3729(a)(1)(A),  (a)(1)(B),

---

[8] *See also United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (per curiam) (finding that allegations of a healthcare-fraud scheme lacked particularity where the complaint did not outline the identity of the physicians working with defendants or the contents of the agreements between defendants and physicians).

(a)(1)(G). "Knowingly" under the FCA means that "the [d]efendants had (1) actual knowledge of falsity, (2) acted with deliberate ignorance of the truth or falsity of the information provided, or (3) acted with reckless disregard of the truth or falsity of the information provided." *United States v. Hodge*, 933 F.3d 468, 473 (5th Cir. 2019) (quoting *United States ex rel. Longhi v. United States*, 575 F.3d 458, 468 (5th Cir. 2009)); *see also* 31 U.S.C. § 3729(b)(1)(A). Negligence and gross negligence are insufficient. *Longhi*, 575 F.3d at 468 (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008)).

Here, the TAC pleads that J. Allen and Allied engaged in wrongful conduct, but the TAC says nothing suggesting scienter. There are no factual allegations leading to the reasonable inference that J. Allen and Allied, in breaching contractual promises, *knew* that they were breaking their commitment, or even that these entities acted with reckless indifference to the truth or falsity of their prior certifications. To be sure, the TAC alleges the opposite: it alleges that the PMCs *did not understand their obligations* and that the PMCs had no experience in following these regulations. Because there are no allegations here providing scienter, the TAC fails to state an FCA claim against J. Allen and Allied, and the district court was correct to dismiss the claims against them.

## VI.

The final issue to be addressed concerns Miniex's motion for leave to amend her TAC. After the grant of the motion to dismiss, Miniex asked the court for leave to amend her TAC, contending that she could resolve the deficiencies that prompted dismissal. The district court denied her request without explanation. A district court's denial of leave to amend is reviewed for abuse of discretion. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).

Miniex correctly notes that the district court failed to explain its decision. *See Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. Unit A Sept. 1981). Nevertheless, "[t]he strong preference for explicit reasons yields to the presence here of ample and obvious grounds for denying leave to amend." *Id.* at 1154. Miniex has amended her TAC three times. *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566–67 (5th Cir. 2002) (affirming a district court's denial of leave to amend after two amended

No. 21-20435

complaints).  Importantly, she has failed to show how she could amend her TAC to get around its various deficiencies.  *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378–79 (5th Cir. 2014) (holding that futility is a substantial reason to deny leave to amend).  Although the district court's decision could have been more thoroughly explained, it was not an abuse of discretion to deny a fourth amendment to the complaint.

## VII.

In conclusion: We REVERSE the dismissal of Miniex's claims against HHA and REMAND the case for further proceedings not inconsistent with this opinion.  We AFFIRM the dismissal of the claims against the City because of inadequate briefing.  We AFFIRM the dismissal of Miniex's claims against the PMCs because the TAC fails under FED. R. CIV. P. 9(b) and 12(b)(6).  And finally, we AFFIRM the district court's decision to deny Miniex's motion for leave to amend the TAC.  In sum, the judgment of the district court dismissing the TAC is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.